■ BEVERLY SOMMER et al., Appellants, v FEDERAL SIGNAL CORPORATION et al., Appellants, HOLMES PROTECTION, INC., Respondent, et al., Defendant.—Wherein reargument and clarification of this court's decision and order (171 AD2d 409) entered on March 5, 1991 are sought, those branches of the relief are granted to the extent of recalling and vacating the aforesaid order and decision and substituting a new decision and order therefor; and wherein leave to appeal to the Court of Appeals is sought, that branch of the relief is granted.

Order, Supreme Court, New York County (Michael Dontzin, J.), entered March 19, 1990, which granted the motion of defendant Holmes Protection, Inc. to dismiss all complaints, cross-claims, counterclaims and third-party claims asserted against it in the main action and in all actions previously consolidated pursuant to prior order of the same court, unanimously modified, on the law and on the facts, to reinstate plaintiff's first cause of action asserting a claim of gross negligence against Holmes Protection, Inc., and the corresponding cross-claims, and as so modified affirmed, without costs.

In this case, we reaffirm the recent holding of this Court which stated that public policy should preclude exemption from liability for grossly negligent acts, notwithstanding a provision in the central station alarm contract which purports to limit the contractor's liability for negligence. (*Hanover Ins. Co. v D & W Cent. Sta. Alarm Co.,* 164 AD2d 112 [1st Dept 1990], *overruling Koos Van Den Akker Atelier v Honeywell Protection Servs.,* 148 AD2d 359, 361 [1st Dept 1989].) Plaintiff 810 Associates ("the Associates") owns and operates the subject building, located at 810 Seventh Avenue in Manhattan.

On January 29, 1982, the Associates entered into a written agreement with defendant Holmes Protection, Inc. ("Holmes"), a provider of burglary and fire alarm services, pursuant to which Holmes agreed to install, maintain and monitor a central station fire alarm system at the premises in question. Contained in the policy were provisions essentially exculpating and limiting the liability of Holmes, and further specifying that "Holmes is not an insurer; that insurance shall be obtained by [the Associates], if any is desired."

On the morning of April 15, 1985, there was a four alarm fire at the subject premises. Two days previous to this, on Saturday April 13, 1985, at 8:58 A.M., Holmes received a call from the Associates requesting that the central station be taken out of service because workers would be welding in the building. The Associates informed Holmes that if an alarm signal was received, it should not notify the fire department, as it would ordinarily be required to do. Significantly, placing the system out of service did not mean that it would be turned completely off; rather, Holmes would still receive a signal read out but would follow a different procedure. Furthermore, it was Holmes' policy to automatically reactivate the system, i.e., to place it back into service within 8-12 hours after the system was taken out of service. The system was accordingly reactivated at 8:58 P.M. that evening.

Nevertheless, at 7:58 A.M. on the morning of April 15, the Associates' chief engineer Sam Garellick, who was apparently unaware that the system was back in service, telephoned Holmes to request that the system be placed back in service, However, the Holmes dispatcher, Henry "Rudy" Rudowitz, apparently confused as to Garellick's instruction, placed the system *out* of service. Approximately eight minutes later, the Holmes central station received a fire alarm signal from the subject building. Rudowitz, still under the mistaken belief as a result of the phone call that Garellick wanted the system placed out of service, neither called the fire department nor made further inquiry. A substantial fire spread on the 28th floor during this time, which Garellick himself ultimately reported. It is the Associates' contention that this four alarm fire resulted in property losses of several millions of dollars.

After issue was joined and numerous related actions by the parties herein consolidated, Holmes moved for summary judgment, seeking dismissal of the primary complaint by the Associates, the cross-claims and counterclaims of defendant and third-party defendants, and the complaints of various tenants of the subject building. Supreme Court granted the

motion in its entirety, concluding, *inter alia,* that no evidentiary facts were asserted sufficient to raise a material, triable issue of fact as to whether Holmes' actions constituted gross negligence, and determining that the only questions raised regarded ordinary negligence, for which liability was limited by the contract.

We disagree with the factual conclusion of the Supreme Court, as we are of the view that the record before us, which includes the tape and transcript of the recorded conversation between Garellick and Rudowitz, establishes that triable issues of fact exist as to whether Holmes was grossly negligent in its failure to respond to alarm signals received from the subject building. *(Cf., Feldman Furs v Jewelers Protection Servs.,* 134 AD2d 171, 172, where the facts as pleaded could not be construed to constitute gross negligence, and indeed, were "not even suggestive of ordinary negligence".) Consistent with our recent holding in *Hanover Ins. Co. v D & W Cent. Sta. Alarm Co. (supra),* we decline to permit exemption from liability for any grossly negligent acts of Holmes. Concur— Ross, J. P., Carro, Milonas, Rosenberger and Asch, JJ.