Jimmie ELSKEN, Administrator of the Estate of Patricia Ann Elsken, Plaintiff,

v.

NETWORK MULTI–FAMILY SECURITY CORPORATION, a foreign corporation, Defendant.

No. 78628.

Supreme Court of Oklahoma.

Oct. 6, 1992.

James E. Frasier, Renee Williams and Steven R. Hickman, Frasier & Frasier, Tulsa, for plaintiff.

John R. Woodard, III and Jody R. Nathan, Feldman, Hall, Franden, Woodard & Farris, Tulsa, for defendant.

HARGRAVE, Justice.

We are presented with three questions certified to this Court from the United States District Court for the Northern Dis-

trict of Oklahoma, pursuant to 20 O.S. §§ 1601 et seq., to wit:

"1. Whether, under Oklahoma law, a contractual limitation of liability for personal injury is valid and enforceable?", and

"2. Whether, under Oklahoma law, the limitation of liability clause contained in the Residential Alarm Security Agreement is valid and enforceable?"

"3. Whether, under Oklahoma law, the indemnification and hold harmless clause is valid and enforceable."

■ We answer question number one as follows: A contractual limitation of liability for personal injury in a burglar alarm service contract may be valid and enforceable, as discussed herein.

■ We answer question number two as follows: If the Residential Alarm Services Agreement submitted was properly executed by both parties, and if the parties dealt at arms length, then such limitation of liability clause would be valid and enforceable to limit liability for ordinary negligence.

■ We answer question number three in the affirmative.

The questions were submitted to this Court on a limited stipulation of facts for purpose of the certified questions only. The facts submitted are as follows: On April 11, 1988, Patricia Ann Elsken was found dead in her apartment, the victim of an apparent homicide. At the time of her death, Patricia Ann Elsken was leasing Apartment No. 1416 of the Windsail Apartments under a lease agreement. Patricia Ann Elsken signed the Residential Alarm Security Agreement, but did not initial the back side of the agreement in the spaces provided. The alarm was working on the day in question. There was no sign of forced entry into Patricia Ann Elsken's apartment. The trial court has made determinations as found in its Order of October 4, 1990, which include that there was no defect in the mechanism of the security system, or regarding proper maintenance. Further, the Court held that the Defendant bears no liability for the independent criminal act of Ms. Elsken's killer which result-

ed in her death. The only issue remaining is whether Defendant's failure to respond to the signalled intrusion was a contributory cause to Ms. Elsken's death. An alarm signal went off from Patricia Elsken's apartment at 10:33 a.m. on the morning of April 11, 1988. Patricia Elsken was found dead later that day. Brentwood Properties, Ltd., was the management corporation managing the apartment complex. They are no longer a party to the lawsuit. Johnstown Properties, Inc., has been granted summary judgment on the grounds it was not in charge of properties at the time of Patricia Elsken's death. An alarm signal was received at Network at 10:33 a.m., April 11, 1988. When no answer was received to the telephone call to Patricia Elsken's apartment, the apartment complex manager was called and told Network to disregard the alarm at 10:38 a.m.

We have upheld a limitation of liability clause in a burglar alarm service contract against allegations that such a clause was violative of public policy. *Fretwell v. Protection Alarm Co.*, 764 P.2d 149 (Okla.1988). We note at the outset that courts have made a distinction between clauses that seek to exempt a contracting party from his own negligence and those that seek to limit the liability of the contracting party. See, *Branch v. Mobil Oil Corp.*, 772 F.Supp. 570 (W.D.Okla.1991), *Fisher v. Atlantic Richfield*, 774 F.Supp. 616 (W.D.Okla.1989), *Mohawk Drilling Co. v. McCullough Tool Co.*, 271 F.2d 627 (10th Cir.1959).

Indeed, Oklahoma statutes specifically provide that a contract having as its object, directly or indirectly, to *exempt* anyone from responsibility for his own fraud or willful injury to the person or property of another or violation of law are against the policy of the law. 15 O.S.1991 § 212. Title 15 O.S.1991 § 212.1 (eff. date January 1, 1986) provides that any notice given by a business entity that provides services or facilities for profit to the general public which seeks to exempt the business entity from liability for personal injury caused by or resulting from negligence on its part or that of its employees shall be deemed void

as against public policy and wholly unenforceable.[1] The clause in the case at bar is a limitation of liability.

In *Hargrave v. Canadian Valley Electric*, 792 P.2d 50 (Okla.1990), while we recognized the court's power to void contracts for violation of public policy, we noted:

> "We must remain mindful that contracts should not be declared void on the ground of public policy except in those cases that are free from doubt. Prejudice to the public interest must hence be clearly apparent before a court is justified in pronouncing a solemn agreement to be of no effect.... Contracts must stand unless it clearly appears that public right or public weal is contravened."

Courts repeatedly have upheld limitation of liability provisions in burglar alarm contracts as not violative of public policy, *see*, *Morgan Co. v. Minnesota Mining & Mfg. Co.*, 310 Minn. 305, 246 N.W.2d 443 (1976), and cases cited therein at p. 447, *Gill v. Rollins Protective Services Co.*, 722 F.2d 55 (4th Cir.1983), *E.H. Ashley & Co., Inc. v. Wells Fargo Alarm Service*, 907 F.2d 1274 (1st Cir.1990), even when applied to a claim for personal injury. *Schrier v. Beltway Alarm Co.*, 73 Md.App. 281, 533 A.2d 1316 (1987). Courts have refused to uphold limitation of liability clauses where the defendant's conduct constituted gross negligence. *Sommer v. Federal Signal Corp.*, 174 A.D.2d 440, 571 N.Y.S.2d 228 (A.D. 1 Dept.1991), *Arrell's Fine Jewelers, Inc. v. Honeywell*, 147 A.D.2d 922, 537 N.Y.S.2d 365 (A.D. 4 Dept.1989).

In *Schrier, supra*, Mr. Schrier, on behalf of Veteran's Liquor, entered into an "Alarm Protection Agreement" with Beltway Alarm Co. for the installation of a "central station connected hold-up" system. The parties also entered into a second contract calling for continued maintenance of the system. Both the contracts contained language limiting Beltway's liability for loss or damage due to a breach of the contract or negligence in performance by Beltway. Schrier was shot and severely wounded during a hold-up of the liquor store. He alleged that he activated two alarm buttons during the robbery, prior to the shooting and that Beltway delayed fourteen minutes in notifying the police department. He alleged that, but for the delay, he would not have been shot. Schrier argued that the contract contained an invalid liquidated damages clause and that the limitation of liability clause was void as against public policy, particularly because personal injury was involved. The court rejected all of Schrier's arguments and upheld the $250.00 limitation of liability provision. In rejecting the argument that the limitation clause was invalid as against public interest the court noted, 533 A.2d at page 1323, that the burglar alarm industry is not performing a police function or public service.

The courts' holdings have been based on several factors: that the security company is not an insurer, the extreme difficulty of predicting the nature and extent of any loss, the difficulty or impossibility of ascertaining what portion of any loss sustained is attributable to the alarm company's failure to perform, and the uncertain nature of occurrences that might cause injury or loss.

In *Fretwell, supra*, plaintiff homeowners brought a negligence action against defendant corporation which had installed and monitored a burglar-alarm system in plaintiff's home. Plaintiffs claimed that defendant failed to notify the police department of a cut in their telephone line that carried the alarm system, that defendant failed to enter the house to check the residence, although having been given a key for that purpose, and that defendant failed to contact persons listed to be notified in the event of an alarm. The contract limited liability of defendant to $50.00, and contained an indemnification clause. The contract stated that defendant was not an insurer and contained liquidated damages provision. The contract further stated that if plaintiffs wanted defendants to assume a

---

1. Oklahoma's Uniform Commercial Code, Sales, at 12A O.S. § 2–719, prohibits limitation of consequential damages for injury to the person in the case of consumer goods, as prima facie unconscionable.

greater liability or responsibility than that set out in the agreement, an additional price must be quoted. The issue was the effect of the contract upon the damages allowed in the negligence action. We said, at pp. 151–152:

"It reasonably follows that since the contract established the duty, any lawful limitations in the contract may also limit the liability of the tortfeasor."

and

"The clause in the case at bar makes no attempt to reasonably forecast just compensation for harm caused, it is clearly an attempt to limit damages. The contract wording is "[T]he liability of Protection shall be limited to the sum of $50.00 or the actual loss of the subscriber, whichever ... is the lesser."

"The contract before this Court explicitly states that the alarm company is not an insurer and offers to increase the monthly payment if insurance is desired. We conclude that the contractual provision before this Court is neither unconscionable nor against public policy. Therefore the damages to the Fretwells is limited to Fifty dollars."

The contract (Residential Alarm Services Agreement) in the case at bar contains a Limitation of Liability section. This section states in bold capital letters that neither client nor Network is an insurer, and that insurance for any type of loss shall be obtained by Resident. The Limitation of Liability section sets out at paragraph 3.3 that Resident acknowledges that it is impractical and extremely difficult to fix the actual damages, if any, that may proximately result from a failure of client or Network to perform any of their respective obligations, or the failure of the system to operate properly, because of, among other things, the uncertainty of determining value of the Resident's property, uncertainty of the response time of dispatched parties, inability to ascertain what portion of any loss would be proximately caused by the system's failure, and the uncertain nature of occurrences that might cause injury or death to Resident or any other person which the system was designed to detect or avert.

Paragraph 3.4 of the Residential Alarm Security Agreement's Limitation of Liability section provides:

"Resident understands and agrees that if either Client or Network should be found liable for loss or damage due to failure of the System in any respect whatsoever, including but not limited to monitoring, Client's and Network's collective liability shall not exceed a sum equal to Two hundred fifty dollars ($250.00) and this liability shall be exclusive. CLIENT AND NETWORK ARE NOT INSURERS AND RESIDENT ASSUMES ALL RESPONSIBILITY FOR OBTAINING INSURANCE TO COVER LOSSES OF ALL TYPES. The provisions of this section shall apply if death, loss or damage, irrespective of cause or origin, results directly or indirectly, to persons or property, from performance or nonperformance of the obligations imposed by this Agreement, or from negligence, active or otherwise, of Client, Network, their agents, employees, legal representatives or assigns."

Paragraph 3.5 provides that Resident understands and agrees that for Network to assume a greater liability, Resident may obtain from Network increased liability by paying an additional charge directly to Network.

The stipulation of facts for purposes of this certified question state that Resident signed the Residential Alarm Security Agreement. She is presumed to have read the provisions thereof and there is no allegation that she did not. We do not know whether the parties were in an unequal bargaining position. Assuming that the parties were not in an unequal bargaining position, the above limitation of liability would be binding and enforceable as to defendant's actions constituting ordinary negligence.

We have held a limitation of liability clause valid in a burglar alarm/security systems contract. Plaintiffs assert that the limitation of liability clause should not operate to limit liability for personal injury.

We view the issue as being whether one contracting party in a burglar alarm contract can contractually limit its liability for ordinary negligence in performance of the contract, and we find that it can, provided that the parties have equal bargaining power.

The third question presented is whether under Oklahoma law the indemnification and hold harmless clause is valid and enforceable. Indemnity is governed by 15 O.S.1981 §§ 421–430. The indemnification clause in the Residential Alarm Security Agreement is:

"4.1 In the event any person not a party to this Agreement shall make any claim or file any lawsuit against Client or Network for any reason relating to the duties and obligations of Client or Network pursuant to this Agreement, including, but not limited to, the design, installation, maintenance, operation or non-operation of the System, or the providing of monitoring, patrol or extended maintenance services, Resident agrees to indemnify, defend and hold Client and Network harmless from any and all such claims and lawsuits, including the payment of all damages, expenses, costs and attorney's fees, whether such claims be based upon alleged intentional conduct, active or passive negligence or strict or product liability on the part of Client, Network, their agents, employees, legal representatives or assigns."

We held a virtually identical indemnification clause valid in *Fretwell, supra.* We rejected there the argument that the indemnity clause was unenforceable because it sought to indemnify the appellant from its own negligence. We said that where the intention to indemnify is unequivocally clear from an examination of the contract, such agreement is enforceable. An examination of the indemnification clause in the Residential Alarm Security Agreement clearly expresses an intention to indemnify Network from its own negligence and we find the agreement to be enforceable. Accordingly, we answer the third question in the affirmative.

CERTIFIED QUESTIONS ANSWERED.

HODGES, V.C.J., and LAVENDER and WATT, JJ., concur.

SIMMS, J., concur by reason of stare decisis.

SUMMERS, J., concur in I and II; concur in III by reason of stare decisis.

KAUGER, J., concur in part; dissent in part.

OPALA, C.J., and ALMA WILSON, J., dissent.