**Jimmie ELSKEN, Administrator of the Estate of Patricia Ann Elsken, Plaintiff–Appellant,**

v.

**NETWORK MULTI–FAMILY SECURITY CORPORATION, a foreign corporation, Defendant–Appellee.**

No. 94–5063.

United States Court of Appeals, Tenth Circuit.

March 6, 1995.

---

Renee Williams, Tulsa, OK, for plaintiff-appellant.

John R. Woodard III (Jody R. Nathan, with him on the brief) of Feldman, Hall, Franden, Woodard & Farris, Tulsa, OK, for defendant-appellee.

Before MOORE and BRORBY, Circuit Judges, and ALSOP,* District Judge.

BRORBY, Circuit Judge.

Jimmie Elsken, the administrator of the estate of her daughter Patricia Elsken, filed this diversity action against Network Multi–Family Security Corporation alleging breach of contract, breach of warranties, negligence, and deceptive trade practices. The district court dismissed the case, and the plaintiff

---

* The Honorable Donald D. Alsop, Senior United States District Court Judge for the District of Minnesota, sitting by designation.

appealed. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## Facts

Patricia Elsken rented an apartment from the Windsail Apartment Community in an attempt to find a safe place to live. Windsail Apartment Community offered a twenty-four hour alarm system from the Network Multi–Family Security Corporation ("Network"). Along with her rental lease, Patricia Elsken signed a Resident Alarm Services Agreement. The Services Agreement contained an indemnity clause and a limitation of Network's liability. Although Patricia Elsken signed the contract, she did not initial the reverse side of the Services Agreement, and it is alleged that she failed to read the contract.

Patricia Elsken was found dead in her apartment on the morning of April 11, 1988, an apparent murder victim. Earlier that morning, at 10:33 a.m., her intrusion security alarm was activated. In response to the alarm, Network tried unsuccessfully to contact Patricia Elsken by telephone. Unable to reach Patricia Elsken by phone, Network contacted the apartment manager's office and advised the manager of the alarm. The apartment manager did not immediately check Patricia Elsken's apartment, and by the time the apartment personnel went to investigate the apartment, police and emergency vehicles had already arrived.

When Patricia Elsken had failed to report to work as expected that morning, a co-worker called her mother. Jimmie Elsken went to the apartment to check on her daughter. She arrived at the apartment before the apartment personnel came to investigate. She found the apartment in disarray and her daughter lying facedown, dead. Patricia Elsken had been stabbed repeatedly and died from a loss of blood.

## Procedural History

Jimmie Elsken, a resident of Paris, Arkansas, acting as administrator of the estate of Patricia Elsken sued Network in federal court in Oklahoma for breach of contract, negligence, and breach of warranties in its failure to respond properly to the alarm. She also claimed Network engaged in deceptive trade practices.

The United States District Court for the Northern District of Oklahoma certified three questions to the Oklahoma Supreme Court. The three questions were (1) whether, under Oklahoma law, a contractual limitation of liability for personal injury is valid and enforceable, (2) whether, under Oklahoma law, the limitation of liability clause contained in the Residential Alarm Services Agreement is valid and enforceable, and (3) whether, under Oklahoma law, the indemnification and hold-harmless clause is valid and enforceable. *Elsken v. Network Multi–Family Sec. Corp.*, 838 P.2d 1007 (Okla.1992). The Oklahoma Supreme Court answered by holding "[a] contractual limitation of liability for personal injury in a burglar alarm service contract may be valid and enforceable ... [i]f the Residential Alarm Services Agreement submitted was properly executed by both parties, and if the parties dealt at arms length." *Id.* at 1008. The Oklahoma Supreme Court also held "where the intention to indemnify is unequivocally clear from an examination of the contract, such agreement is enforceable," and therefore, the indemnification and hold-harmless clause of the Services Agreement was valid and enforceable. *Id.* at 1011.

On the basis of the answers to these certified questions, the federal district court granted Network's motion to dismiss the claims and denied Jimmie Elsken's motion to reconsider. Ms. Elsken appeals, alleging error in the district court's conclusions that the Services Agreement was properly executed and that the parties made the agreement at arms length. Ms. Elsken also claims the district court erred in applying the limitation of liability provision to causes of action based upon theories other than negligence. Finally, Ms. Elsken challenges the district court's denial of her motion to reconsider.

## Discussion

Although styled as a motion to dismiss, the motion was evaluated on materials outside of the pleadings and therefore was treated as a motion for summary judgment in accordance

with Fed.R.Civ.P. 12(b) and 56. We review the grant of summary judgment *de novo,* applying the same legal standard used by the district court under Fed.R.Civ.P. 56. *Applied Genetics Int'l, Inc., v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir. 1990).

## I. Limitation of Liability Clause

The Resident Alarm Services Agreement between Patricia Elsken and Network contained a limitation of liability provision. The contract referred to Patricia Elsken as "Resident," the apartment complex as "Client," and Network as "Network." Specifically the agreement stated

3.0 LIMITATION OF LIABILITY

3.1 It is understood and agreed that NEITHER CLIENT NOR NETWORK ARE INSURERS AND THAT INSURANCE, IF ANY, FOR ANY TYPE OF LOSS, SHALL BE OBTAINED BY RESIDENT. . . .

. . . .

3.4 Resident understands and agrees that if either Client or Network should be found liable for loss or damage due to the failure of the System in any respect whatsoever, including, but not limited to monitoring, Client's and Network's collective liability shall not exceed a sum equal to Two Hundred and Fifty Dollars ($250.00) and this liability shall be exclusive. CLIENT AND NETWORK ARE NOT INSURERS AND RESIDENT ASSUMES ALL RESPONSIBILITY FOR OBTAINING INSURANCE TO COVER LOSSES OF ALL TYPES. The provisions of this section shall apply if death, loss or damage, irrespective of cause or origin, results directly or indirectly, to persons or property, from performance or nonperformance of the obligations imposed by this Agreement, or from negligence, active or otherwise, of Client, Network, their agents, employees, legal representatives or assigns.

(Emphasis in original.) Ms. Elsken asserts the district court erred in dismissing the case when there existed factual questions as to whether the Services Agreement was properly executed and whether the parties were in unequal bargaining positions.

### A. Execution of the Agreement

Ms. Elsken argues the contract was not properly executed because the limitation of liability was on the reverse side of the Services Agreement and Patricia Elsken did not initial the bottom of the reverse side where there was a space for initials. Ms. Elsken also submitted, from the apartment complex manager, an affidavit stating Patricia Elsken did not even read the Services Agreement. This affidavit was submitted with Ms. Elsken's motion to reconsider. Jimmie Elsken relies on this allegation to support her claim that the document was not properly executed.

The district court noted Patricia Elsken signed the first page of the Services Agreement below a provision articulating a presumption that the agreement was properly executed, a fact Ms. Elsken does not contest. This provision stated:

RESIDENT ACKNOWLEDGES THAT RESIDENT HAS READ AND UNDERSTANDS ALL OF THIS RESIDENT AGREEMENT INCLUDING THE TERMS AND CONDITIONS ON THIS SIDE AND THE REVERSE SIDE, PARTICULARLY PARAGRAPH 3.0 LIMITATION OF LIABILITY AND AGREES TO THE AMOUNTS SET FORTH THEREIN.

(Emphasis in original.) Ms. Elsken contends the district court erred because the trier of fact should decide whether or not Patricia Elsken read the Services Agreement and whether or not it was, in fact, properly executed. She avers it was inappropriate for the court to resolve the question of the effect, if any, of the absence of evidence to rebut the textual presumption.

1. Failure to initial a provision in a contract.

■ It is undisputed that Patricia Elsken signed the front page of the Services Agreement. On the back of the page, there was a limitation of liability clause. Although the side of the paper displaying the limitation of liability clause contained a space for initials,

Patricia Elsken did not initial that page. Ms. Elsken argues that, due to this omission, the limitation of liability clause was not in effect because Patricia Elsken did not agree to the provision. However, Ms. Elsken has cited no law to support her contention that the failure to initial a provision renders it void and ineffective when the front of the document was signed.

Based upon a plain reading of the contract, Patricia Elsken agreed to the contract in its entirety as written. She signed directly below a statement in conspicuous, bold capital letters declaring the signing party was agreeing to the entire Services Contract. This statement further emphasized the limitation of liability clause on the back of the page. Under Oklahoma law, "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Okla.Stat.Ann.tit. 15, § 154 (West 1993).

The district court found the language of the Services Agreement was clear and explicit: "Resident acknowledges that resident has read and understands all of this resident agreement including the terms and conditions on this side and the reverse side, particularly paragraph 3.0 limitation of liability." (Emphasis omitted.) Ms. Elsken cannot avoid the application of the limitation of liability when her daughter signed directly below a statement of acceptance of the contract that explicitly incorporates the provisions on the reverse side of the page. *See Vails v. Southwestern Bell Tel. Co.,* 504 F.Supp. 740, 745 (W.D.Okla.1980) (quoting *N & D Fashions, Inc. v. DHJ Indus., Inc.,* 548 F.2d 722, 727 (8th Cir.1976)). Patricia Elsken's failure to initial the reverse side of the Services Agreement does not preclude summary judgment. The contract itself advised her of the terms on the back of the page.

2. Failure to read the contract.

■ Ms. Elsken next argues the contract cannot be enforced because Patricia Elsken did not read it. However, Patricia Elsken did sign the contract, and under Oklahoma law, " '[w]here a party signs a written agreement, in the absence of false representation or fraud, he is bound by it, although ignorant

of its contents.' " *Hicks v. State Farm Mut. Auto Ins. Co.,* 568 P.2d 629, 633 (Okla.1977) (quoting *All American Bus Lines, Inc. v. Schuster,* 199 Okla. 628, 189 P.2d 412, 414 (1948)).

There is no evidence presented showing Patricia Elsken was not given the opportunity to examine and read the contract. The affidavit from the apartment manager states only that Patricia Elsken "did not read her [Resident Alarm Services Agreement] and she did not sign the back of it either."

■ Furthermore, Ms. Elsken has not claimed Patricia Elsken signed the contract without reading it due to fraud, misrepresentation, or deceit. Under Oklahoma law, a party who signs a contract without reading it cannot avoid its legal effect on the ground that it did not read the contract or that the contents of the contract were not known to the party. *See Darby Petroleum Co. v. Bowers,* 185 Okla. 285, 91 P.2d 663, 666 (1937) (releases); *First Nat'l Bank & Trust Co. of El Reno v. Stinchcomb,* 734 P.2d 852, 854 (Okla.Ct.App.1987). Therefore, Patricia Elsken's failure to read the Services Agreement does not preclude summary judgment. Regardless of whether she read the document, it is binding on her because she signed it and there is no allegation that her signature was induced by duress or misrepresentation. The contract was therefore properly executed.

B. Bargaining Positions

■ In answering the certified questions, the Oklahoma Supreme Court noted, "We do not know whether the parties were in an unequal bargaining position." *Elsken,* 838 P.2d at 1010. Ms. Elsken argues that if the Oklahoma Supreme Court could not determine the parties' respective bargaining power, then neither could the district court. She contends the district court had insufficient evidence to make such a finding and therefore dismissal was improper.

However, Ms. Elsken fails to highlight law and sufficient facts showing the existence of unequal bargaining power between Network and Patricia Elsken. She simply notes for the court that the contract was presented to

Patricia Elsken "on a take-it-or-leave-it basis" and residents were not permitted to make changes to the Services Agreement. From these assertions alone a fact finder would be unable to determine that Patricia Elsken was in a bargaining position that would render the Services Agreement unenforceable.[1] Because no facts or law have been presented to create a genuine issue of fact that the parties were in unequal bargaining positions sufficient to render the contract unenforceable, we affirm the district court's dismissal of the claims.

### C. Non-negligence Claims

■ On appeal, Ms. Elsken also asserts the district court erred by applying the limitation of liability clause to causes of action other than negligence. In answering the certified questions, the Oklahoma Supreme Court stated the "limitation of liability would be binding and enforceable as to defendant's actions constituting ordinary negligence." *Elsken*, 838 P.2d at 1010. Ms. Elsken's complaint, however, included claims for breach of contract, breach of warranties, and deceptive trade practices in addition to a claim of negligence. She argues if the limitation of liability is enforceable, it can only be applied to her claim of negligence due to the narrow and clear language of the Oklahoma Supreme Court. Thus, she asserts, without citing any law to support her position, the district court erred in dismissing her other claims.

The Oklahoma Supreme Court, in its analysis of the limitation of liability clause, stated a contract may not exempt anyone from liability, but may limit their liability. *Id.* at 1008–09. The court also noted that other jurisdictions have held the limitation of liability is consistent with public policy as long as it does not limit liability where the defendant's conduct constituted gross negligence. *Id.* at 1009. From this, Ms. Elsken asserts the district court erred in dismissing her claims of breach of contract, breach of warranty, and deceptive trade practices. However, the Oklahoma Supreme Court also noted "'[i]t reasonably follows that since the

contract established the duty, any lawful limitations in the contract may also limit the liability of the tortfeasor.'" *Id.* (quoting *Fretwell v. Protection Alarm Co.*, 764 P.2d 149, 151 (Okla.1988)).

The Oklahoma Supreme Court was not addressing claims other than negligence in answering the certified questions; therefore, its language applied the limitation of liability clause only to negligence cases. There was no reason for the Oklahoma Supreme Court to rule on non-negligence claims; therefore, we have no reason to assume the court restricted the application of the clause to negligence claims alone. The clause itself states the limitation applies "if death, loss or damage, irrespective of cause or origin, results directly or indirectly, to persons or property, from performance or nonperformance of the obligations imposed by this Agreement, *or* from negligence, active or otherwise." (Emphasis added.) From the plain language of the contract the limitation is not restricted to claims of negligence.

Ms. Elsken also ignores the indemnity clause of the Services Agreement, which states:

> In the event any person not a party to this agreement shall make any claim or file any lawsuit against Client or Network for any reason relating to the duties and obligations of Client or Network pursuant to this agreement including, but not limited to, the design, installation, maintenance, operation or non-operation of the System, or the providing of monitoring, patrol or extended maintenance services, Resident agrees to indemnify, defend and hold Client and Network harmless from any and all such claims and lawsuits, including the payment of all damages, expenses, costs and attorney's fees, whether such claims be based upon alleged intentional conduct, active or passive negligence, or strict or product liability on the part of Client, Network, their agents, employees, legal representatives or assigns.

The Oklahoma Supreme Court held the indemnification clause of the Services Agree-

---

1. The Services Agreement reveals that Patricia Elsken could have bargained for a higher limit on liability. This undercuts Ms. Elsken's argument that the contract was absolutely unnegotiable.

ment valid and enforceable. *Elsken,* 838 P.2d at 1011. Since Ms. Elsken is a third party to the Services Agreement, the indemnification clause requires Patricia Elsken to indemnify and hold Network harmless from all of Ms. Elsken's claims for damages. This would include the breach of contract, breach of warranty, negligence, and deceptive trade practices[2] claims. Because Ms. Elsken has not established a basis to sue as a successor, the district court did not err in dismissing each of Ms. Elsken's claims against Network.

## II. Denial of Motion to Reconsider

Ms. Elsken's final argument on appeal is the district court erred in denying her motion to reconsider. She asserts her motion to reconsider presented the court with evidence to establish genuine issues of material fact as to whether or not the Services Agreement was properly executed and whether or not the parties dealt from equal bargaining positions.

Although not formally addressed in the Federal Rules of Civil Procedure, a motion to reconsider is often treated as a Rule 60(b) motion. *See Van Skiver v. United States,* 952 F.2d 1241, 1243 (10th Cir.1991) (if the motion is served within ten days of the rendition of judgment, it is treated under Rule 59(e); otherwise the motion is treated under Rule 60(b)), *cert. denied,* —— U.S. ——, 113 S.Ct. 89, 121 L.Ed.2d 51 (1992). An appeal of a district court's denial of a motion to reconsider "raises for review only the district court's order of denial and not the underlying judgment itself." *Id.* Therefore, we review a denial of a motion to reconsider only for an abuse of discretion. *See, e.g., Cox v. Sandia Corp.,* 941 F.2d 1124, 1125 (10th Cir.1991).

Even considering the additional evidence presented with the motion to reconsider, the apartment manager's affidavit, we have already determined the district court did not err in dismissing the suit. Therefore, the

district court did not abuse its discretion in denying the motion to reconsider.

## Conclusion

We have found no error in the district court's dismissal of this case. The contract was properly executed and there was insufficient evidence to show unequal bargaining positions. Conclusory allegations that are unsubstantiated do not create an issue of fact and are insufficient to oppose summary judgment, and accordingly, we **AFFIRM.**

---

2. The district court correctly dismissed the deceptive trade practices claim because Ms. Elsken sought only damages and made no claim for injunctive relief. The Oklahoma Deceptive Trade Practice Act provides for aggrieved parties to receive injunctive relief. Okla.Stat. tit. 78, § 54

(1991). If a party seeks an injunction and proves actual damages then the party can obtain damages. However, since Ms. Elsken was not seeking injunctive relief, the claim was not properly before the court.