**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 7 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JANINE A. ADAMS; CHARLES C. SAMUEL,

      Plaintiffs-Appellants,

v.

THE CITY OF OKLAHOMA CITY, a municipal
corporation; DONALD D. BOWN, City
Manager; DANNY TERRELL, Director, General
Services Department; TERRY PATTILLO,
Assistant Director, General Services Department,

      Defendants-Appellees.

No.  97-6175
(D.C. No. CIV-96-399-T)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRORBY**, **BARRETT**, and **BRISCOE**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9.  The case is therefore

ordered submitted without oral argument.

---

[*]    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiffs Janine A. Adams and Charles C. Samuel appeal from the district court's orders granting summary judgment in favor of defendants on their claims of violation of their First Amendment rights under 42 U.S.C. § 1983, retaliation under 42 U.S.C. § 2000e-3(a) (Title VII), breach of contract, and defamation. Ms. Adams also appeals the grant of summary judgment on her claim of violation of equal protection under § 1983 and her separate breach of contract claim. We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part and reverse and remand in part for further proceedings on plaintiffs' breach of contract claim.

I.  FACTS

In August 1984, Mr. Samuel came to work for the Oklahoma City General Services Department. At the time the alleged incidents giving rise to this suit began occurring in 1993, he was Superintendent of the Department's Building Management Division. In February 1985, Ms. Adams began her employment with the City as a word processor/typist in the City Manager's Office. In March 1988, Ms. Adams laterally transfered into the Building Management Division as a Staff Secretary, ultimately serving as Mr. Samuel's secretary.

In October or November of 1993, Ms. Adams made an internal complaint of sexual harassment against a co-worker to her immediate supervisor, Mr. Samuel.

Mr. Samuel brought the complaint to the attention of his supervisor, Jim Crosby, then Director of the General Services Division, who asked Mr. Samuel to counsel the co-worker about his behavior. Mr. Samuel did so.

In December 1993, Ms. Adams was transfered from the Building Management Division to the Personnel Department. Although previously classified as a Secretary III, she was transferred to a Secretary II position. The parties dispute whether the transfer was voluntary, with Ms. Adams claiming it was not. The transfer was described as "personnel generated" on the relevant personnel action form.

Although she was his secretary, Mr. Samuel was not informed that Ms. Adams was being transfered. Defendant Terry Pattillo, Assistant Director of the General Services Division, informed Ms. Adams of the transfer, telling her that Mr. Crosby believed the transfer was in her and the City's best interests. Just prior to her transfer, Ms. Adams was told there were rumors circulating that she and Mr. Samuel were having an affair.

In January and February 1994, Mr. Samuel was denied an annual merit increase and placed on probation by Mr. Crosby. In May 1994, on Mr. Crosby's

last day of employment with the City, Mr. Samuel received his merit increase, was removed from probation, and was told the work environment in his division had improved.

On February 7, 1994, Ms. Adams grieved her "involuntary transfer," alleging sex discrimination. On June 7, 1994, she filed a related complaint with the Equal Employment Opportunity Commission (EEOC), alleging sex discrimination and retaliation. Mr. Samuel was asked to respond to specified investigative questions submitted to the defendant City of Oklahoma City by the EEOC. According to Mr. Samuel, he was told by defendant Danny Terrell, now the Director of the General Services Division and Mr. Samuel's supervisor, to answer "in the best interests of the City." Mr. Samuel's response was limited to the sexual harassment complaint, and ultimately was not submitted to the EEOC. Rather, the City submitted a response denying knowledge of any sexual harassment complaint by Ms. Adams during the relevant time period established by the EEOC.

While her internal grievance and EEOC complaint were pending, Ms. Adams and defendant City Manager Donald D. Bown entered into an agreement and release of claims. Under the agreement, Ms. Adams was returned to her

-4-

Secretary III position in the Building Management Division in exchange for withdrawing her grievance and EEOC claim. The parties further agreed that the City would not pursue any personnel actions against Ms. Adams based on allegations, accusations or complaints made prior to execution of the agreement. By its terms, the agreement was confidential.

After Ms. Adams' return to the Building Management Division in July 1994, Mr. Terrell had several meetings with Mr. Samuel to discuss "complaints" about the job performances of both Mr. Samuel and Ms. Adams. Mr. Terrell also directed Mr. Samuel never to have Ms. Adams in his office with the door closed.

In October 1994, Mr. Samuel found a memorandum addressed to the personnel director on his desk. The memo had been written by Chris Spencer, an employee Mr. Crosby had introduced into the Building Management Division around the time of Ms. Adams' earlier transfer. Because Mr. Samuel believed the memorandum was defamatory, he met with Mr. Terrell to discuss possible disciplinary action against Mr. Spencer. When questioned, Mr. Spencer claimed the memorandum was in response to information he had received indicating Ms. Adams and Mr. Samuel were trying to have him fired. Mr. Spencer stated he

never sent the memorandum to anyone. Mr. Terrell refused to authorize disciplinary action against Mr. Spencer.

Following her return to the Building Management Division, several complaints were made about Ms. Adams' performance, and she received counseling on at least two occasions. She believed she was being deliberately harassed and filed grievances. On February 2, 1995, she went to Mr. Samuel's office to meet with him regarding her grievances. Unaware of Mr. Terrell's directive to Mr. Samuel, Ms. Adams closed the door. When Mr. Pattillo and Mr. Terrell were informed, they proceeded to Mr. Samuel's office, asked Ms. Adams to leave, and met with Mr. Samuel.

Between February 2 and February 8, 1994, Mr. Terrell and Mr. Pattillo discussed the problems in Mr. Samuel's division with Mr. Bown, including Mr. Samuel's violation of Mr. Terrell's directive not to be in his office with the door closed with Ms. Adams. It was determined that both Mr. Samuel and Ms. Adams should be terminated. On February 9, 1995, Mr. Samuel was terminated by Mr. Terrell "in the best interest of the City." The following day, Mr. Terrell terminated Ms. Adams "for the good of the service." Both Mr. Samuel and Ms. Adams subsequently filed grievances.

-6-

During her grievance process, Ms. Adams was told her termination was due to the attempts she and Mr. Samuel were making to have Mr. Spencer fired and because her alleged relationship with Mr. Samuel created an appearance of favoritism. As a result of the grievance process, however, Ms. Adams was offered reinstatement to her position, with back pay and benefits. She declined.

During his grievance process, Mr. Samuel was told he was terminated because of insubordination and failure to correct personnel problems in the Building Management Division. After completion of the grievance procedure, Mr. Bown upheld Mr. Samuel's termination.

In July 1995, Mr. Samuel and Ms. Adams filed EEOC complaints. In March 1996, this lawsuit, raising Title VII, § 1983, and state law claims, followed. The district court granted defendants' motions for summary judgment on all claims. Ms. Adams and Mr. Samuel now appeal, arguing there was sufficient evidence to preclude the grant of summary judgment.

## II. STANDARD OF REVIEW

We review the district court's grant of summary judgment de novo,

applying the same legal standard used by the district court pursuant
to Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the

> pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.

*Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996) (quotation marks and citation omitted). "[T]he relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Bingaman v. Kansas City Power & Light Co.*, 1 F.3d 976, 980 (10th Cir. 1993) (quotation marks and citation omitted).

"To avoid summary judgment, the evidence must be such that a reasonable jury could return a verdict for the nonmoving party." *Black v. Baker Oil Tools, Inc.*, 107 F.3d 1457, 1460 (10th Cir. 1997) (citation and quotation omitted). The substantive law of the case determines which facts are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Unsupported conclusory allegations do not create an issue of fact. *See Elsken v. Network Multi-Family Sec. Corp.*, 49 F.3d 1470, 1476 (10th Cir. 1995).

III. RETALIATION UNDER TITLE VII

   A. MS. ADAMS

Ms. Adams argues that summary judgment was improper on her Title VII claim against the City in which she alleged she was terminated in retaliation for making an internal claim of sexual discrimination and for filing a complaint with the EEOC. The district court decided Ms. Adams was terminated for a nondiscriminatory reason.

   To prove retaliation,

   [a] plaintiff must first establish a prima facie case of retaliation. If a prima facie case is established, then the burden of production shifts to the defendant to produce a legitimate, nondiscriminatory reason for the adverse action. If evidence of a legitimate reason is produced, the plaintiff may still prevail if she demonstrates the articulated reason was a mere pretext for discrimination. The overall burden of persuasion remains on the plaintiff.

*Sorensen v. City of Aurora*, 984 F.2d 349, 353 (10th Cir. 1993).

According to Ms. Adams, she produced sufficient evidence to show retaliation. She points to evidence she was transfered from her Secretary III position to a Secretary II position a month or two after she complained of sexual harassment; Mr. Pattillo solicited information from other employees concerning her relationship with Mr. Samuel; the City agreed to restore her Secretary III

position only after she filed an EEOC complaint; Mr. Terrell complained about her to Mr. Samuel after her return transfer; Mr. Terrell failed to give any reasons when she was terminated; and she did not receive progressive discipline or a pretermination hearing.

This evidence, considered along with the record as a whole, does not establish that Ms. Adams was terminated in retaliation for her internal complaint of employment discrimination or her EEOC complaint. Ms. Adams failed to demonstrate that the nondiscriminatory reason for her termination, attempting to have Mr. Spencer fired, was a mere pretext for retaliation. Thus, the district court correctly granted summary judgment on Ms. Adams' Title VII claims.

## B. MR. SAMUEL

Mr. Samuel argues the district court erred in granting summary judgment on his Title VII claim, alleging his termination was in retaliation for his truthful response to Ms. Adams' EEOC complaint.[1] The district court concluded Mr.

---

[1]     Defendants argue that Mr. Samuel's response was not protected activity. Title VII provides that an employer shall not discriminate against an employee who participates "in any manner" in an EEOC investigation. 42 U.S.C. § 2000e-3(a). Because Mr. Samuel prepared his response in the pending EEOC investigation pursuant to his employer's request, we assume for purposes of this appeal that it was protected activity. *Cf. Morris v. Boston Edison Co.*, 942 F. Supp. 65, 69-71 (D. Mass. 1996) (conduct in internal company

Samuel failed to prove a prima facie case of retaliation because he did not present evidence to support his claim that his termination was related to the preparation of the EEOC response or in any way connected to Ms. Adams' EEOC complaint.

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must demonstrate "(1) protected opposition to Title VII discrimination or participation in a Title VII proceeding; (2) adverse action by the employer subsequent to or contemporaneous with such employee activity; and (3) a causal connection between such activity and the employer's adverse action." *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 985 (10th Cir. 1996). "The causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir.), *cert. denied*, 459 U.S. 1071 (1982).

Mr. Samuel claims there is sufficient evidence to establish a prima facie case of retaliation, and points to the following occurrences. After Ms. Adams complained to him of sexual harassment, he notified Mr. Crosby. Soon after he

investigation not protected activity under § 2000e-3(a) because conduct was not taken in regard to investigation under statute).

was notified, Mr. Crosby placed Mr. Samuel on probation, albeit for reasons unrelated to her complaint. According to Mr. Samuel, he was directed to respond to the EEOC investigation in a manner representing the best interests of the City. The City failed to include his statement regarding Ms. Adams' sexual harassment complaint in its response to the EEOC. Mr. Samuel maintains that after he prepared his response to the EEOC complaint and Ms. Adams was transfered back to his division until the time of his termination, he received continual complaints from Mr. Terrell. Mr. Terrell also prohibited Mr. Samuel from taking any disciplinary action against Mr. Spencer arising from the defamatory memorandum. Additionally, Mr. Samuel did not receive progressive discipline or a pretermination hearing.

Upon review of the record, we agree with the district court's finding that there is no evidence of a causal connection between any protected activity and Mr. Samuel's subsequent termination. The evidence presented does not justify an inference of retaliatory motive. Nothing indicates the EEOC response was a basis for complaints against Mr. Samuel or a reason for his termination. Mr. Samuel was discharged for meeting behind a closed door with Ms. Adams after having been directed not to do so and because he did not operate his division in an acceptable manner. Mr. Samuel failed to present a prima facie case of retaliation.

Accordingly, we affirm the district court's grant of summary judgment on this issue.

## IV. 42 U.S.C. § 1983 CLAIMS

### A. FIRST AMENDMENT

Ms. Adams alleges her right to complain of sexual harassment is protected by the First Amendment. Mr. Samuel argues his bringing Ms. Adams' internal complaint to the attention of Mr. Crosby and his participation in the EEOC's investigation were activities protected by the First Amendment.[2]

As to the individual defendants, the district court concluded Ms. Adams had not engaged in protected speech on a matter of public concern. The district court determined Mr. Samuel had submitted no evidence his termination had anything to do with his participation in the preparation of the EEOC response. The district court granted summary judgment in favor of the City because Mr.

_____

[2] Defendants argue that plaintiffs' First Amendment claims are not independent of their Title VII claims, and, therefore, Title VII should provide the exclusive remedy. We disagree. Because plaintiffs have alleged an independent constitutional basis for their § 1983 claims apart from Title VII, Title VII does not provide the exclusive remedy. *See Drake v. City of Fort Collins*, 927 F.2d 1156, 1162 (10th Cir. 1991).

Samuel and Ms. Adams failed to offer any evidence of a municipal policy or custom upon which a claim against the City could be based.

"It is well-established that a government employer 'cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression.'" *Lytle v. City of Haysville*, 138 F.3d 857, 863 (10th Cir. 1998) (quoting *Connick v. Myers*, 461 U.S. 138, 142 (1983)). There is a four-part test to determine whether an employer has infringed a public employee's free speech interest. *See id.* The threshold consideration is whether the speech in question is a matter of public concern, such that it is of interest to the community for social, political, or other reasons. *See id.* (citing *Connick*, 461 U.S. at 145-49). A matter of interest only to the public employee is not constitutionally protected. *See id.* Whether speech addresses a matter of public concern is "determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147-48.

If the speech does address a matter of public concern, the next step is to weigh the interests of the employee in expression and the employer in regulating speech. *See Lytle*, 138 F.3d at 863. If the speech is protected because the employee's interests outweigh the employer's, "the employee must show that the

speech was a substantial or motivating factor for the challenged governmental action." *Id.* If the employee meets this burden, the employer must show that it would have taken the same action regardless of the protected speech. *See id.*

We conclude, based on the record as a whole, Ms. Adams was speaking on matters of purely personal concern. Her speech related to her personal grievances, not to a broader public purpose. *See David v. City & County of Denver*, 101 F.3d 1344, 1355 (10th Cir. 1996), *cert. denied*, 118 S. Ct. 157 (1997). Although Ms. Adams contends sexual harassment is annoying, embarrassing and demeaning to women in general and to any women in the office who overheard it or were subjected to it, and that every woman should be able to stop such behavior without fear of punishment, these allegations are merely theoretical. *See Woodward v. City of Worland*, 977 F.2d 1392, 1403-04 (10th Cir. 1992) (speech was personal even though general references were made that other women may have been subjected to sexual harassment), *cert. denied*, 509 U.S. 923 (1993). The speech at issue concerned allegations of sexual harassment affecting only Ms. Adams. At no time did she argue harassment interfered with the performance of governmental responsibilities. *See David*, 101 F.3d at 1356. We agree with the district court's legal conclusion that Ms. Adams' speech did

not involve matters of public concern. *See Rankin v. McPherson*, 483 U.S. 378, 386 n.9 (1987) (whether speech is protected is question of law).

Mr. Samuel contends he responded to the EEOC investigation honestly because he owed it to Ms. Adams and other females to do so. Because he had nothing to gain personally from responding honestly, especially since he was asked to respond in the best interests of the City, he contends his speech was a matter of public concern.

Whether Mr. Samuel's speech is a matter of public concern is a somewhat closer question. His internal response noting only a single episode of sexual harassment may be enough to establish speech rising to the level of public concern. *Cf. Starrett v. Wadley*, 876 F.2d 808, 817 (10th Cir. 1989) (speech disclosing any evidence of impropriety by city official involves matter of public concern). Assuming the speech is constitutionally protected, we conclude, as did the district court, Mr. Samuel failed to present any evidence indicating he was terminated in retaliation for his response to the EEOC investigation. *See Wulf v. City of Wichita*, 883 F.2d 842, 856-57 (10th Cir. 1989) ("Upon a finding that the speech in question is constitutionally protected, the plaintiff must prove that the speech was a substantial or motivating factor in the challenged employment

-16-

decision."). There is no evidence any individual defendant commented to Mr. Samuel regarding his EEOC response, or that his response was inconsistent with the City's position that no discrimination or retaliation had taken place during the relevant time period. Nothing in Mr. Samuel's response would have assisted Ms. Adams in proving her discrimination claim. There is no evidence of any connection between Mr. Samuel's EEOC response and his termination. Based on the record, we conclude Mr. Samuel was terminated for nonretaliatory reasons.

Mr. Samuel and Ms. Adams failed to prove a First Amendment violation. Therefore, the district court correctly granted summary judgment in favor of the individual defendants. We need not address their qualified immunity defense. *See Lytle*, 138 F.3d at 863.

Mr. Samuel and Ms. Adams argue the City is liable under § 1983 because each of the individual defendants was a policy maker. A municipality may be held liable for § 1983 claims only if its custom or policy results in a violation of federal law. *See David*, 101 F.3d at 1357 (citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)). Because plaintiffs' § 1983 allegations against the City are the same as those against the individual defendants, our conclusion that there was no First Amendment violation also

establishes the City's entitlement to summary judgment on this issue. *See id.* at 1358; *see also United States v. Sandoval*, 29 F.3d 537, 542 n.6 (10th Cir. 1994) (permitting affirmance of district court's decision on any ground for which there is sufficient record to permit conclusions of law).

## B. EQUAL PROTECTION

Although it is not clear from the briefs on appeal, Ms. Adams appears to be arguing her equal protection rights were violated when she was singled out for transfer and later terminated in retaliation for complaining about the transfer. The district court concluded Ms. Adams presented no evidence of a causal connection between her termination and any prior complaints of sexual harassment or discrimination. We agree. Thus, there was no deliberate deprivation of her equal protection rights. *See Woodward*, 972 F.2d at 1399. Because there was no equal protection violation, the district court correctly granted summary judgment for the individual defendants and for the City.

## V. STATE LAW CLAIMS

Ms. Adams and Mr. Samuel raised various Oklahoma state law claims against the City. "When exercising jurisdiction over pendent state claims, we must apply the substantive law of the forum state and reach the same decision we

believe that state's highest court would, just as we would if our jurisdiction rested on diversity of citizenship." *Lytle*, 138 F.3d at 868.

## A. BREACH OF CONTRACT

Ms. Adams and Mr. Samuel both argue the City breached their respective employment contracts by failing to follow applicable policies and procedures requiring progressive discipline and a "pre-determination" hearing before dismissal from employment. Ms. Adams and Mr. Samuel state they were denied an opportunity to defend themselves prior to termination and were not told the actual reasons for their dismissal when terminated. Mr. Samuel also argues there were various irregularities in his post-termination grievance proceedings. The district court concluded any pretermination procedural defects were remedied by the full post-termination proceedings.

Because the Oklahoma City Charter permits the city manager to dismiss employees for the good of the City, Ms. Adams and Mr. Samuel do not claim a property interest in their employment. *See Driggins v. City of Okla. City*, 954 F.2d 1511, 1514 (10th Cir.), *cert. denied*, 506 U.S. 843 (1992). Oklahoma courts, however, will enforce grievance procedures set forth in a personnel manual when the procedural protections establish entitlement to the procedures themselves. *See*

-19-

*Carnes v. Parker*, 922 F.2d 1506, 1511 (10th Cir. 1991); *see also Breshears v. Moore*, 792 P.2d 91, 92 (Okla. Ct. App. 1990) (holding policies and procedures create duty on employer to do certain things before discharge even though employer has right to discharge any employee at any time for any reason).

The City's policies and procedures provide that the employee must be informed of the reasons for dismissal and provided an opportunity to rebut any charges prior to dismissal. Even dismissal for cardinal infractions precluding rehiring, such as gross insubordination, normally requires a pre-determination hearing to allow the employee to respond to the charges. The relevant department policies and procedures set forth a normal progression of disciplinary actions consisting of two informal actions followed by three formal actions, a written reprimand, suspension without pay, and finally dismissal. This policy further recognizes, however, that for serious violations, dismissal may be warranted as a first step.

The City denies that these policies and procedures require progressive discipline or pretermination hearings. As a matter of law, we conclude Ms. Adams and Mr. Samuel were not entitled to progressive discipline. The policies of the City apparently permit a subjective determination of what behavior is

serious enough to warrant dismissal as a first step.  However, we further conclude the City's policies do establish entitlement to a pre-determination hearing prior to dismissal.

The City acknowledges Ms. Adams and Mr. Samuel were terminated without "any real advance notice."  The City claims it provided minimal compliance with its policies and procedures, noting Ms. Adams and Mr. Samuel were told their terminations were for the good of the City and were given an opportunity to rebut that charge when they met individually with Mr. Terrell.  The City admits, however, that this pretermination process was not elaborate.  *Cf.* III Appellants' App. at 1002 (Mr. Bown testified that he did not recall Ms. Adams or Mr. Samuel having pre-determination hearings).  Ms. Adams and Mr. Samuel dispute the adequacy of these pretermination procedures.  *See, e.g., id.* at 917-18 (Ms. Adams testified that she had an opportunity to discuss reasons for her termination, but only after her termination).

Because there is a genuine issue of material fact as to whether Ms. Adams and Mr. Samuel received adequate pre-determination hearings, we conclude the district court erred in granting summary judgment on this issue.  Accordingly, the action is remanded for further proceedings on this breach of contract claim.  *See*

*Kester v. City of Stilwell*, 933 P.2d 952, 953-54 (Okla. Ct. App. 1997). Also, the action is remanded for the district court to consider whether there were irregularities in Mr. Samuel's post-termination grievance proceedings.

### B. BREACH OF AGREEMENT AND RELEASE OF CLAIMS

Ms. Adams contends the City breached the agreement and release of claims it entered into with her to resolve her EEOC charge. The agreement provided, in pertinent part, that all written policies and procedures of the City would apply to Ms. Adams, the City would not pursue any personnel action against her based on allegations made prior to the date of the agreement, and the agreement would remain confidential. According to Ms. Adams, the confidentiality of the agreement was breached by the City, much of the retaliation she experienced after her return to the Building Management Division stemmed from complaints raised at the time of her transfer, and she was terminated based on complaints made prior to the agreement.

We find no evidence to support this breach of contract claim. The primary reason for her termination was her conduct toward Mr. Spencer, which occurred after the settlement agreement. *See* II Appellants' App. at 587-88. Ms. Adams' assertion of breach of confidentiality is conclusory and unsupported; she merely

-22-

states that a vendor told her another city employee was talking about the agreement. The district court correctly granted summary judgment on this breach of contract claim.

C. DEFAMATION

Ms. Adams and Mr. Samuel allege the memorandum written by Mr. Spencer defamed them. The district court determined the City could not be liable because there was no evidence the allegedly defamatory memorandum was ever published and because Mr. Spencer was acting outside the scope of his employment when he wrote the memorandum.

We also fail to find any evidence of publication. *See Young v. First State Bank*, 628 P.2d 707, 713 (Okla. 1981) (plaintiff has burden of proving publication, which is essential element of defamation). Moreover, even if the memorandum was published internally, such internal publication is not actionable under Oklahoma defamation law. *Cf. Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1553 (10th Cir. 1995) ("intracompany communications do not constitute actionable publication under Oklahoma defamation law"). Because there was no evidence of publication, there is no need to discuss whether Mr. Spencer was

acting within the scope of his employment.  We conclude the district court correctly granted summary judgment on the defamation claim.

The judgment of the United States District Court for the Western District of Oklahoma is **AFFIRMED** in part and **REVERSED** and **REMANDED** in part for further proceedings on plaintiffs' breach of contract claim.[3]

**Entered for the Court**

**WADE BRORBY**
United States Circuit Judge

---

[3] On remand, the district court will need to conduct the appropriate analysis to determine if it should retain jurisdiction over this pendent state claim in light of the disposition of the federal causes of action. *See Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533, 541 (10th Cir. 1995); *Thatcher Enters. v. Cache County Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).